# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Coastal Forest Resources Company d/b/a<br>Coastal Timberlands Company,<br>formerly and collectively known as<br>Coastal Lumber Company,<br>a Virginia Corporation,<br><br>    Plaintiff,<br><br>              v.<br><br>Chevron U.S.A., Inc.<br>P.O. Box 4791<br>Houston, TX 77210-4791,<br>a Pennsylvania Corporation,<br><br>Chevron Appalachia, L.L.C.<br>P.O. Box 4791<br>Houston, TX 77210-4791,<br>a Pennsylvania Corporation,<br><br>Atlas America, LLC<br>P.O. Box 611<br>Moon Township, PA 15108,<br>a Pennsylvania Limited Liability Company,<br><br>    Defendants. | CIVIL ACTION NO.: 2:20-CV-1119<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Coastal Forest Resources Company, a Virginia Corporation d/b/a Coastal Timberlands Company, formerly collectively known as Coastal Lumber Company, a Virginia Corporation, ("Coastal"), by and through Lauren A. Melfa Catanzarite of Marcus & Shapira LLP, and Frank E. Simmerman, II, and Chad L. Taylor of Simmerman Law Office, PLLC whose admissions with the Western District of Pennsylvania are pending, states and alleges as follows:

## PARTIES

1. Plaintiff Coastal Forest Resources Company, a Virginia Corporation d/b/a Coastal Timberlands Company, formerly collectively known as Coastal Lumber Company, a Virginia Corporation is the owner of a mineral estate of approximately 356.4 acres located in Greene Township of Greene County, Pennsylvania.

2. Defendant Chevron USA, Inc., ("Chevron USA"), is an oil and gas operator and producer operating, drilling, transporting and producing hydrocarbons in and throughout Greene County, Pennsylvania, whose notice of process address is: CT Corporation System, 123 South Broad Street, Philadelphia, Pennsylvania 19109.

3. Defendant Chevron Appalachia, L.L.C., ("Chevron Appalachia"), is an oil and gas operator and producer operating, drilling, transporting and producing hydrocarbons in and throughout Greene County, Pennsylvania, whose notice of process address is: CT Corporation System, 123 South Broad Street, Philadelphia, Pennsylvania 19109.

4. Defendant Atlas America, L.L.C., ("Atlas"), is an oil and gas operator and producer operating, drilling, transporting and producing hydrocarbons in and throughout Greene County, Pennsylvania, whose notice of process address is: CT Corporation System, 123 South Broad Street, Philadelphia, Pennsylvania 19109.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because of diversity of citizenship of the parties and as the amount in controversy exceeds $75,000, exclusive of costs and interest.

5. Venue in this District is proper under 28 U.S.C. §1391 as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this District.

## FACTS

6. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

7. The mineral estate which is the primary subject of this action is an estate of approximately 356.4 net mineral acres located in Greene Township of Greene County, Pennsylvania, more particularly described in Exhibit 1, hereafter referred to as the "Mineral Estate". See Exhibit 1 – Lease Agreement Dated 11/21/2007.

8. More specifically, on November 21, 2007 Coastal leased the Mineral Estate to Atlas America, LLC. See Id.

9. The Lease Agreement specifically places the duty to market hydrocarbon production on the Lessee. See Id.

10. The Lease Agreement further specifically provides, in relation to royalty payment(s) for gas/hydrocarbon production, that Coastal/the Lessor will be paid a production royalty follows:

   a. Oil: To pay Lessor, as royalty for all oil and the constituents thereof, produced and saved from any well or wells drilled on the leases premises. An amount equal to five-thirty-seconds (5/32) or <u>15.625% of the price received by Lessee from the gross sale of such oil in the tanks, pipelines or other facilities, to which the Lessee may connect its wells.</u>

   b. Gas: To pay Lessor as royalty for all gas and constituents thereof, including all liquid, solid or gaseous substances produced and saved from any sand or sands on the leases premises, an amount equal to five-thirty-seconds (5/32) or <u>15.625% of the gross sales price received by Lessee from the sale of such gas and the constituents thereof at the wellhead.</u> (emphasis added).

See Id.

11. Ultimately, the afore-referenced Lease Agreement was vested in some, or all, of the Chevron Defendants when, on or about April 20, 2011 a Certificate of Amendment was filed with the Pennsylvania Department of State – making Chevron Appalachia, LLC the Lessee under the Lease Agreement.

12.     Prior to the foregoing transaction, by Assignment dated April 16, 2010, effective April 20, 2010, Atlas America, LLC farmed out a portion of the mineral leasehold interest at issue to a third party – when it assigned a portion of Coastal's leasehold interest to Reliance Marcellus, LLC.

13.     Critical to the present issue, Reliance Marcellus, LLC, or its successor Diversified Production, LLC, included approximately 74 mineral acres from the Lease Agreement within a production unit known as the Headlee #11 Unit in Greene County, Pennsylvania. See Exhibit 2 – Consolidation of Oil & Gas Leases – Headlee #11 Unit.

14.     Indeed, under the very terms of the Lease Agreement at issue, Coastal has historically received royalty payment(s) from Reliance Marcellus, LLC, or its successor Diversified Production, LLC, which **do not** deduct any post-production costs/expenses. See Exhibit 3 – Headlee #11 Unit – Mineral Production Pay Stub Dated 4/16/2020.

15.     In relation to development of the Mineral Estate, and the present Defendants, Coastal recently discovered that substantial drilling and production is occurring under the terms and provisions of the Lease Agreement by the various named Defendants – in what is commonly known as the Defendants Commonwealth A Northwest Unit. See Exhibit 4 - Consolidation of Oil & Gas Leases – Commonwealth A Northwest Unit.

16.     Specifically, Coastal recently discovered that the following horizontal wells, said wells being jointly operated by the Defendants, are active and producing gas in marketable quantities, on the approximately 356.4-acre mineral lease:

- 059-26914 - Commonwealth 496 1H
- 059-26920 - Commonwealth 496 2H
- 059-26921 - Commonwealth 496 3H
- 059-26768 - Commonwealth 496 4H
- 059-26922 - Commonwealth 496 5H
- 059-26923 - Commonwealth 496 6H

- 059-26924 - Commonwealth 496 7H
- 059-27538 - Commonwealth A 8H[1]

17. Indeed, per the Consolidation of Oil & Gas Leases – Commonwealth A Northwest Unit – approximately 192.29 of the 356.4 Coastal net mineral acre estate identified within the Lease Agreement is included in the Defendants' Commonwealth A Northwest Unit. See Id., Gateway Engineering Plat – Prepared for Chevron Appalachia, LLC.

18. Speaking further, Coastal learned of this recent, substantial hydrocarbon production when it received an unannounced check dated April 28, 2020 from some, or all, of the Defendants. See Exhibit 5 – Copy of 4/28/2020 Check from Chevron, et al.

19. To be clear, Coastal did not receive, nor did it execute, a Division Order prior to receipt of the foregoing, unannounced check – the standard practice in the oil and gas industry.

20. Per the face of the check, the Defendants are diluting Coastal's Mineral Estate, and proceeds, by taking unauthorized deductions/adjustments from the gross sales price for post-production costs/expenses – deductions which are inconsistent with the plain language of the Lease Agreement and with other natural gas producers interpretation of, and payments under, the Lease Agreement. See Id., juxtaposed to Exhibit 3 – Headlee #11 Unit – Mineral Production Pay Stub Dated 4/16/2020.

21. For example, as plainly set forth within Exhibit 5, the gross value of production associated with Coastal's interest in the Mineral Estate per the Defendants was $266,195.99 as of the April 28, 2020 check stub – and the Defendants unilaterally deducted $53,834.28 in the section titled "cost/other adj" – from Coastal's gross value/owner interest value. See Id.

---

[1] Coastal is investigating other production by the Defendants which may contravene the express terms of the Lease Agreement. Coastal will amend its Complaint if further investigation reveals additional violations of the Lease Agreement.

22. Following receipt of Exhibit 5, Coastal inquired from the Defendants as to what the term "cost/other adj" meant within the context of the Chevron check stub attached hereto as Exhibit 5 – and the Chevron Defendants admitted and conceded that the deductions are for "post production cost." See Exhibit 6 – Email from Chevron dated 5/6/2020.

23. Following this discovery, by letter dated May 14, 2020 Coastal requested additional information from the Defendants – in an olive branch attempt to avoid protracted litigation. See Exhibit 7 – Letter to Defendants (and affiliates) dated 5/14/2020.

24. More specifically, per the Lease Agreement, Clause 13, Coastal is entitled to the following information from the Defendants:

> Lessee shall prepare and maintain a complete and accurate log on each well drilled by it on the leased premises, and promptly upon the completion of each well, Lessee shall furnish to Lessor a properly attested copy of the log relating to such well. Lessee shall from time to time upon request furnish to Lessor with information as to the progress of all drilling operations. Each log shall show the elevation above mean sea level of zero to point of the log record, the depth of the well, the strata penetrated, the thickness of each coal seem penetrated. Lessor shall have the right to have its own representative present at the drilling of all wells. In regard to a well producing gas in marketable quantities, Lessee shall furnish Lessor written reports with respect to each of such wells showing:
>
> a) The original rock pressure and subsequent rock pressures;
>
> b) The point where the well is shot, if shot, and the character and the amount of explosive used;
>
> c) The formations treated and the character and the amount of the treating material used;
>
> d) The rock pressure and open flow before and after the well is shot or treated; and
>
> e) <u>All other data, which may be available with respect to each of such wells.</u>

<u>Lessee shall also, by accurate survey as prescribed by state regulations, tie in the location of such well to fixed reference points and survey lines on the leased premises, and shall furnish to Lessor three (3) copies of maps showing the location of each well and all the referenced data required for locating the same.</u>

See Exhibit 1, Clause 13 (emphasis added).

25. Consistent with the foregoing lease agreement language, Coastal requested the following information/documents from, among others, the Defendants:

- All preliminary title opinions;

- All drilling title opinions;

- All payment title opinions;

- All Declarations and Notices of Pooled Units (and amendments thereto, if any);

- All production and waste reports submitted to the Pennsylvania Department of Environmental Protection on a monthly basis;

- All oil and gas well pad reports submitted to the Pennsylvania Department of Environmental Protection;

- All oil and gas well formation reports submitted to the Pennsylvania Department of Environmental Protection;

- All other reports and documents in your possession which evidence or relate to calculation of division orders or division order interests associated with the wells;

- All other reports and documents in your possession which evidence or relate to purported post-production costs associated with production from the wells; and

- All other reports and data in your possession which relates to calculation of royalties owing to Coastal from production of marketable gas or hydrocarbons from the wells.

See Exhibit 7 – Letter to Defendants (and affiliates) dated 5/14/2020.

26. The Defendants did not respond to Plaintiff's 5/14/2020 request for production and well information/data, nor did they explain how they have written consent to operate/drill the afore-noted horizontal wells – as required by the plain language of the Lease Agreement.

27. Stated succinctly, at this time, Coastal is unaware as to what post-productions costs the Defendants are deducting (e.g. transportation, separation, gathering, dehydration, compression or other treatment costs/expenses – Coastal is also without knowledge as to whether or not the hydrocarbons were sold to an affiliate of the Defendants, or the price basis, e.g. index based, spot price based, or fixed, or point of title transfer) as, despite Coastal's demand for information concerning post-production costs/expenses, the Defendants have stonewalled Coastal's contractual request for information/well data.

28. Upon information and belief, to date, the Defendants have failed to make proper payments for production of hydrocarbons from the Mineral Estate.

29. In sum, the Defendants do not have, nor have they ever had, the right to deduct post-production costs/expenses from Plaintiff's gross hydrocarbon royalty, nor have the Defendants fulfilled their duty to market the gas estate.

30. As indicated above, the Defendants have <u>admitted</u> that they have historically, and are currently, unilaterally taking such unauthorized and improper post production expense/cost deductions.

31. Upon information and belief, the Defendants, acting collectively or individually, have continued extracting hydrocarbons from the Mineral Estate to date – thereby committing a continuous, unlawful trespass/breach that also tolls any applicable statutes of limitation.

32. Upon information and belief, the Lease Agreement is an agreement which does not fix any specific time for payment or for termination – and is accordingly a continuous contract –

such that the statute of limitations does not begin to run until the termination of the contractual relationship between the parties.  See Thorpe v. Schoenbrun, 202 Pa. Super. 375, 378, 195 A.2d 870, 872 (1963); see also 31 Williston on Contracts § 79:21 (4th ed. 2015).

33. Alternatively, upon information and belief, the Lease Agreement is a divisible contract where installments of periodic payments are owed, such that "a separate and distinct cause of action accrues for each payment as it becomes due."  American Motorists Insurance Co. v. Farmers Bank and Trust Company of Hanover, 435 Pa. Super. 54, 644 A.2d 1232, 1235 (Pa. Super. 1994); see also Ritter v. Theodore Pendergrass Teddy Bear Productions, Inc., 356 Pa. Super. 422, 514 A.2d 930, 935 (Pa. Super. 1986).

34. Upon information and belief, this action is wholly consistent with the Pennsylvania Supreme Court's decision in Kilmer v. Elexco Land Servs., Inc., 605 Pa. 413, 428, 990 A.2d 1147, 1157 (2010), as this District has previously noted that royalty provision breach of contract breach claims remain viable post Kilmer. See Marburger v. XTO Energy, Inc., 2:15-cv-00910-DSC-CRE (explaining the interaction of the holding in Kilmer and breach of oil and gas contract claims/royalty disputes in denying oil and gas operator's motion to dismiss).

35. Upon information and belief, the Defendants, some or all, are vicariously liable for the acts, conduct, and omissions of their employees, agents, contractors, subcontractors and/or servants, under the doctrines of respondeat superior, master/servant, principal/agent, and/or employer/employee.

36. Upon information and belief, one or more Defendants engaged in a joint venture or common law partnership with respect to the exploitation of the Mineral Estate and Lease Agreement.

37. Upon information and belief, two or more Defendants have acted in concert, pursuant to a common plan or design, in failing to honor their duties and obligations under the Lease Agreement, and in doing so have injured and damaged Plaintiff.

38. At all relevant times, Plaintiff has acted in good faith and has otherwise complied with all obligations set forth in the Lease Agreement.

**COUNT I – BREACH OF CONTRACT/DUTY TO MARKET (EXPRESS & IMPLIED)**

39. Plaintiff repeats and incorporates all numbered and unnumbered paragraphs, as though fully set forth herein.

40. Hydrocarbons were produced by the Defendants pursuant to the Lease Agreement.

41. The Defendants have made periodic royalty payments to the Plaintiff.

42. The Defendants breached the Lease Agreement by taking impermissible post-production/expenses deductions when calculating the natural gas royalties/when paying hydrocarbon royalties to Plaintiff.

43. The Lease Agreement does not authorize, nor does common law allow, the Defendants to charge Plaintiff with post-production expenses/deductions – as the Lease Agreement is a "gross sales price received" lease.

44. Further, the Defendants have breached the duty of good faith and fair dealing inherent within the Lease Agreement, and the Defendants have breached the Lease Agreement by failing to provide Plaintiff contractually owed information, data and documents.

45. The Lease Agreement also places the duty to market hydrocarbon production under the terms of the Lease Agreement solely on the Defendants/Lessee – which has also been breached by the conduct outlined herein.

46. The Defendants have also breached the implied duty to market, which is inherent within the Lease Agreement. More specifically, the Defendants have breached the implied

covenant/duty to market by failing to solely bear the costs to make the gas marketable, i.e. the Defendants have failed to render the produced minerals marketable, particularly when the lease is a "gross sale" lease.

47. Finally, the Defendants are also in breach of Clause 22 of the Lease Agreement – as no post-production deductions are permissible on the face of the Lease Agreement – as Clause 22 provides that: "Lessor shall receive as royalties for minerals produced and marketed from the pooled area an amount equal to the proportion that Lessor's acreage placed in the pooled area bears to the total acreage in the pooled area."

48. The Defendants' breaches of the Lease Agreement have proximately caused damages to the Plaintiff.

49. As a direct and proximate result of the breaches, the Defendants have paid, and continue to pay, Plaintiff substantially less than the full royalties due to Plaintiff.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor against Defendants, jointly and severally, and the following relief be granted:

(1) An amount of compensatory damages and losses allowed by law, and such compensatory/general damages as are appropriate, and that judgment be entered declaring that the Defendants, or their successors/assigns, cannot deduct post-production expenses/costs under the terms of the Lease Agreement;

(2) An award of punitive/exemplary damages to punish the Defendants for their willful, wanton, intentional, bad faith and reckless actions and omissions; and to deter such other future willful, wanton, intentional, bad faith and reckless actions and omissions;

(3) Pre-judgment and post-judgment interest;

(4) Costs and attorneys' fees; and

(5) Such other relief, both special and general, as may become appropriate.

## COUNT II – ACCOUNTING

50. Plaintiff repeats and incorporates all numbered and unnumbered paragraphs, as though fully set forth herein.

51. Under Pa.R.Civ.P. 1021 (a), a plaintiff may seek an accounting as part of his remedy at law. Although generally a request for a court ordered accounting must be incident to a viable assumpsit claim, the Supreme Court of Pennsylvania stated in 2010 in <u>Kilmer v. Elexco Land Services</u> that a royalty owner on an oil and gas lease may request a court ordered accounting if the royalty owner "suspects" that the royalty payments are incorrect. Under <u>Kilmer</u>, therefore, no viable assumpsit claim is required for a court ordered accounting because a royalty owner can "suspect" that payments are incorrect without yet having a viable assumpsit claim.

52. At bar, Plaintiff made a pre-suit request/contractual request for an accounting – which was ignored by the Defendants

53. The Plaintiff requests a court ordered accounting of each monthly royalty payment to the Plaintiff that includes the following information, on a well-by-well basis, together with copies of all source documents or electronic databases from which the information was derived:

   a. The amount of the natural gas royalty paid;

   b. The volumes of natural gas produced as measured by the production meter on the leased property;

   c. The volumes of natural gas deducted from the volumes in item b. for purposes of calculating each month's royalty payment;

   d. The price per mcf paid to the lessor for each month's production of natural gas from each well, along with (i) the name of the purchaser; (ii) a copy of the purchase contract; and (iii) disclosure of whether the immediate purchaser or any subsequent

    purchaser is related to or affiliated with the Defendant or has any overlapping ownership with the Defendant.

e. The amount of any monetary deductions taken from each month's natural gas royalty payment and, as to those deductions, (i) a breakdown showing the amount deducted for each category of post-production costs; (ii) the entity paid by the lessor for each category of post-production costs; (iii) the date of each payment; (iv) the amount of each payment; (v) a copy of the contract requiring the payment; (vi) a copy of the lessor's check making the payment; and (vii) disclosure whether the entity providing the post service is related to or affiliated with the Defendants or has any overlapping ownership interest with the Defendants.

f. With respect to oil production and oil royalties (i) the amount of oil produced by each well in each month; (ii) the price paid to the Defendants in the sale of such oil; (iii) the name and address of the purchaser; (iv) a copy of the purchase contract; (iv) whether the immediate purchaser or any subsequent purchaser is related to or affiliated with the Defendants or has any overlapping ownership interest with the Defendants; (v) the amount of any monetary deductions taken from each month's oil royalty for each well; (vi) a breakdown showing the amount deducted for each category of post-production costs; (vii) the entity paid by the lessor for each category of post-production costs; (viii) the date of each payment; (ix) the amount of each payment; (x) a copy of the contract requiring the payment; (xi) a copy of the lessor's check making the payment; and (xii) disclosure whether the entity providing the post production service is related to or affiliated with the defendant or has any overlapping ownership interest with the Defendants.

    g.  Such other additional information/data which relates to the allegations set forth in this Complaint, including the information/data requested pre-suit by Plaintiff.

WHEREFORE, the Plaintiff demands an accounting as set forth herein.

Dated: July 24, 2020

Respectfully submitted,

*/s/ Lauren A. Melfa Catanzarite*
Lauren A. Melfa Catanzarite (PA ID 206905)
MARCUS & SHAPIRA LLP
301 Grant Street
One Oxford Centre, 35th Floor
Pittsburgh, PA 15219-6401
Telephone:   412-471-3490
Facsimile:   412-391-2315
E-mail:   catanzarite@marcus-shapira.com

Frank E. Simmerman, III (WV ID 11589)
Chad L. Taylor (WV ID 10564)
SIMMERMAN LAW OFFICE, PLLC
254 East Main Street
Clarksburg, WV 26301
Telephone:   304-623-4900
Facsimile:   304-623-4906
E-mail:   trey@simmermanlaw.com
          clt@simmermanlaw.com
(*W.D. Pa. Admissions Pending*)

*Counsel for Plaintiffs Coastal Forest Resources Company d/b/a Coastal Timberlands Company*

**JURY TRIAL DEMANDED**